HONORABLE RONALD B. LEIGHTON

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| JULIE SCHMIDT and LEON GERHARD<br><br>Plaintiffs,<br><br>v.<br><br>TACOMA POLICE DEPARTMENT, et al.,<br><br>Defendants. | Case No. C09-5135RBL<br><br>ORDER GRANTING THE CITY DEFENDANTS' SUMMARY JUDGMENT MOTION |

THIS MATTER is before the court on Defendants' City of Tacoma, Tacoma Police Officer Robert Luke, and Tacoma Police Officer Donald Williams (City Defendants) motion for Summary Judgment [Dkt. #74]. Plaintiffs were tenants in a Tacoma house. The Plaintiffs tried to evict a family who was residing with them. Officer Williams eventually evicted all tenants, including Plaintiffs, because of code violations. In relation to these events, the Plaintiffs had numerous contacts with the City Defendants.

Based on those contacts, Plaintiffs assert defamation claims against Officer Williams. Plaintiffs also assert claims for disability discrimination and constitutional violations under 42 U.S.C. §1983. The City Defendants seek summary dismissal of all claims. They argue that Plaintiffs were never deprived of any federal right, and that Officers Luke and Williams are entitled to qualified immunity in any case. The City Defendants argue that Plaintiffs do not establish that any damage resulted from the allegedly slanderous statements. The City Defendants further argue that Plaintiffs do not establish a prima facie discrimination case.

ORDER
Page - 1

**Facts**

Plaintiffs Julie Schmidt and Leon Gerhard were rental tenants in a Tacoma house located on South Alaska street. In early 2008, Plaintiffs invited the Godwin family to stay with them. The Godwin family included several adults and two children. The relationship between Plaintiffs and the Godwins soured, and in May 2008, Plaintiffs tried to evict them. The Godwins contacted the Tacoma Police Department to complain about Plaintiffs' actions. Community Liaison Officer (CLO) Robert Luke went to the South Alaska residence with the Plaintiffs' landlord, Terrance Galvan, in response to the Godwins' complaint. Luke informed Schmidt that she had illegally evicted the Godwins, and that she needed to allow them access to the house. Soon after, Luke was reassigned to a different area of the city, and was replaced by CLO Donald Williams.

On July, 17, 2008, Williams responded to a request by Child Protective Services to perform a welfare and safety check on behalf of the children residing at the South Alaska residence. Schmidt gave Williams permission to conduct the welfare check. During his visit, Williams noted a number of significant electrical and structural hazards. He then requested assistance to investigate these hazards. Ruben Carter, a Tacoma Power inspector, and Lisa Melancon, a Code Enforcement inspector, responded to the call. The inspectors arrived that day around 1:00 p.m.. Schmidt allowed them to enter the house and investigate. Carter determined that the hazards constituted a threat to life and safety. Based on Carter's investigation, Tacoma Power terminated electrical service. Because Melancon understood that the Tacoma Municipal Code did not permit occupancy of a house without electricity, she posted a "Do Not Occupy" notice on the premises.

After the inspections, Williams provided Plaintiffs with a resource card regarding temporary assistance. He also told them that they had to be out of the house by 7:00 p.m.. Plaintiffs complied, and left the house around 6:00 p.m.. Later that evening, around 9:30 p.m., Williams drove by and noticed Plaintiffs walking out of the house. He then decided that the house should be boarded up.

On July 21, 2008, Williams and Code Enforcement Officer Lloyd Swick went to Plaintiffs' residence. Plaintiffs were inside the house with a work crew that was performing electrical repairs without a permit. The officers made the crew and all the tenants leave the premises, and then boarded up the house.

On a number of subsequent occasions, Code Enforcement officers allowed Plaintiffs to enter the house and retrieve their belongings. The City of Tacoma also paid for Plaintiffs to stay in a hotel for four days following their eviction.

The Plaintiffs filed a complaint against the City Defendants on March 13, 2009. The City Defendants now seek summary dismissal of all Plaintiffs' claims.

## Discussion

### 1. Summary Judgment Standard

Summary judgment is appropriate when, viewing the facts in the light most favorable to the nonmoving party, there is no genuine issue of material fact which would preclude summary judgment as a matter of law. Once the moving party has satisfied its burden, it is entitled to summary judgment if the non-moving party fails to present, by affidavits, depositions, answers to interrogatories, or admissions on file, "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). "The mere existence of a scintilla of evidence in support of the non-moving party's position is not sufficient." *Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995). Factual disputes whose resolution would not affect the outcome of the suit are irrelevant to the consideration of a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In other words, "summary judgment should be granted where the nonmoving party fails to offer evidence from which a reasonable [fact finder] could return a [decision] in its favor." *Triton Energy*, 68 F.3d at 1220.

### 2. 42 U.S.C. §1983 Claims

Plaintiffs bring §1983 claims against the City Defendants for allegedly violating the Plaintiffs' constitutional rights, but do not clearly articulate which rights were allegedly violated. §1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress...

42 U.S.C. § 1983.

A plaintiff alleging municipal liability for civil rights violations must prove three elements: (1) a violation of his/her constitutional rights, (2) the existence of a municipal policy or custom, and (3) a causal nexus between the policy or custom and the constitutional violation. *Monell v. New York City*

*Dept. of Social Services*, 436 U.S. 658, 691 (1978).  A plaintiff must show that the municipality acted with the requisite degree of culpability, and he must demonstrate a direct casual link between the municipal action and the deprivation of federal rights. *Bd. of County Comm'rs of Bryan County v. Brown*, 520 U.S. 397, 404 (1997).  In other words, the municipality's actions must be the "moving force" behind the rights deprivation. *Id*.  On the other hand, §1983 liability cannot be vicarious or premised on respondeat superior. *Polk County v. Dodson*, 454 U.S. 312, 325 (1981); *Monell*, 436 U.S. at 690-94.

To make out a cause of action under §1983 against an individual defendant, "plaintiffs must plead that (1) [defendants] acting under color of state law (2) deprived plaintiffs of rights secured by the Constitution or federal statutes." *Gibson v. United States*, 781 F.2d 1334, 1338 (9th Cir. 1986).

Government officials are entitled to qualified immunity from damages for civil liability as long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  The existence of qualified immunity generally turns on the objective reasonableness of the actions, without regard to the knowledge or subjective intent of the particular official. *Id*. at 819.  The purpose of qualified immunity is "to recognize that holding officials liable for reasonable mistakes might unnecessarily paralyze their ability to make difficult decisions in challenging situations, thus disrupting the effective performance of their public duties."  *Mueller v. Auker*, 576 F.3d 979, 993 (9th Cir. 2009).  Thus, only gross incompetence is punished; reasonable mistakes are immunized.

In analyzing a qualified immunity defense, the Court must determine:  (1) what right has been violated;  (2) whether that right was so "clearly established" at the time of the incident that a reasonable officer would have been aware of its constitutionality;  and (3) whether a reasonable public officer could have believed that the alleged conduct was lawful. *See Gabbert v. Conn*, 131 F.3d 793, 799 (9th Cir.1997); *Newell v. Sauser*, 79 F.3d 115, 117 (9th Cir.1996).  To be clearly established, the law must be sufficiently clear that a reasonable official would understand that his or her action violates that right. *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).  The court should look to whatever decisional law is available to determine whether the law was clearly established at the time the alleged acts occurred. *Capoeman v. Reed*, 754 F.2d 1512, 1514 (9th Cir. 1985).

**A)  Plaintiffs' §1983 claims against the City of Tacoma fail because they do not show that a policy or custom was responsible for any alleged constitutional deprivation; or that the City ratified some unlawful conduct.**

Plaintiffs allege that the City of Tacoma deprived them of constitutional rights, but do not allege that a municipal policy or custom was responsible for any alleged federal rights deprivation. They do not provide any evidence that the City of Tacoma ratified some unlawful conduct. Plaintiffs fall far short of proving that the City's actions were the "moving force" behind an alleged federal rights deprivation. Plaintiffs' §1983 claims against the City of Tacoma therefore fail as a matter of law, and those claims against the City of Tacoma are DISMISSED WITH PREJUDICE.

**B)  Plaintiffs' §1983 claims against the individual officers fail because plaintiffs do not show that the officers deprived them of any federal right, and because the officers are entitled to qualified immunity in any case.**

### i)  Alleged 4th Amendment violation

Plaintiffs allege that the City Defendants violated their 4th Amendment right to be free from unreasonable searches because Williams entered their house without a warrant. Consent is an exception to the 4th Amendment's prohibition against unreasonable search and seizures. *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973). Plaintiffs admit that Williams, Carter, and Melancon each had permission to enter their house. Thus, any of claims by Plaintiffs based on an allegedly unreasonable search fail as a matter of law.

### ii)  Alleged equal rights deprivation

Plaintiffs vaguely allege that the City Defendants violated their 14th amendment right to equal protection of the laws. To maintain this action, Plaintiffs must prove (1) that the City Defendants acted with an intent or purpose to discriminate against them; and (2) that this intent to discriminate was based upon Plaintiffs' membership in a protected class. *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998).

There is no evidence that the City Defendants intended to discriminate against Plaintiffs based on their status as disabled persons. In fact, there is no evidence that the City Defendants actually discriminated against the Plaintiffs. Therefore, Plaintiffs' claims based on violations of equal protection fail as a matter of law.

### iii) Alleged Due Process Violation

Plaintiffs allege that the City Defendants violated their right to due process by forcing Plaintiffs to vacate their residence. As a general rule, due process requires a hearing before a person may be deprived of his or her property. *Fuentes v. Shevin*, 407 U.S. 67, 81-82 (1972); *Spiegel v. Ryan*, 946 F.2d 1435, 1439 (9th Cir. 1991). But there are "extraordinary situations" that justify postponing a hearing until after the deprivation. *Fuentes*, 407 U.S. at 90. "Extraordinary situations" have three common characteristics: (1) the property seizure is necessary to secure an important governmental interest or a general public interest; (2) there is a special need for prompt action; and (3) the person initiating the seizure is a government official responsible for determining, under the standards of a narrowly drawn statute, that it was necessary and justified in the particular instance. *Id.* at 91; *Spiegel*, 946 F.2d at 1439.

"The emergency evacuation of tenants from a dangerous and potentially life-threatening structure qualifies as an 'extraordinary situation.'" *Grayden v. Rhodes*, 345 F.3d 1225, 1237 (11th Cir. 2003). In *Grayden*, the court reasoned that a city's interest in protecting its citizens outweighs a tenants' interest in enjoying uninterrupted occupancy at their residence of choice. *Id.* Still, a tenant may be entitled to an affirmative, contemporaneous notice of their right to challenge a decision that their home is uninhabitable. *Id.* at 1244. In *Grayden*, the court held that such notice must be given at the same time an official gives a tenant the notice to vacate. *Id.*

In this case, Plaintiffs were deprived of a property interest - the continued tenancy at their residence - without any hearing. However, the City Defendants were under no obligation to provide a hearing because an "extraordinary situation" justified their action. Melancon determined that Plaintiffs' residence was uninhabitable, so Williams required Plaintiffs to vacate the premises. Nevertheless, Plaintiffs may have been entitled to an affirmative, contemporaneous notice that they could challenge Melancon's decision.[1] There is no evidence that Williams informed Plaintiffs of this option. Without deciding whether Williams deprived Plaintiffs of a constitutional right, the court will determine whether that right was "clearly established" at the time of the incident, and whether a reasonable public officer could have believed that the alleged conduct was lawful.

---

[1] In *Grayden*, the 11th Circuit held that tenants are indeed entitled to such notice. 345 F.3d at 1244. The Court has not found any 9th Circuit case adopting this rule, and it declines to address that issue here.

ORDER
Page - 6

Tacoma Municipal Code 2.01.060 describes how to procure an administrative review of an inspector's decision. It provides:

> A person, firm, or corporation may request an administrative review by the Building Official of the Notice of Violation for a Substandard or Derelict Building(s), by filing a written request with the Department of Public Works within 30 calendar days of the first notification date of violations.

TMC 2.01.060(F)(5)(b). Therefore, a government official could have reasonably believed that he had no duty to notify Plaintiffs of their right to review his decision. *See City of West Covina v. Perkins*, 525 U.S. 234, 241 (1999)(Statutes can provide sufficient notice of an opportunity to be heard). Even if Plaintiffs' had the right to be notified about the review process, that right was not clearly established. Officer Williams did not act with gross incompetence. At most, he made a reasonable mistake. For these reasons, Williams is entitled to qualified immunity on Plaintiffs' due process claim.

Plaintiffs may also claim that the City Defendants violated their right to substantive due process. To establish a violation of substantive due process, Plaintiffs must prove that the government's action was clearly arbitrary and unreasonable, having no substantial relation to public health, safety, morals, or general welfare. *Eucid v. Ambler Realty Co.*, 272 U.S. 365, 395 (1926). There is no claim and no proof that Defendants' actions were clearly arbitrary; to the contrary, the undisputed evidence is that the Defendants' acted to secure public safety. The City Defendants took the challenged action to secure public safety. Any claim based on an alleged violation of due process fails as a matter of law.

### iv) Alleged excessive force

Schmidt asserts an excessive force claim against Officer Luke based on their brief contacts. Excessive force claims are analyzed under the fourth amendment objective reasonableness standard. *Graham v. Connor*, 490 U.S. 386, 395 (1989). Reasonableness depends on the entire circumstances of a particular case. *Id*. at 396. There is no evidence that Officer Luke acted unreasonably here. Indeed, Schmidt admits that Officer Luke never even touched her. Plaintiff's alleged excessive force claim therefore fails as a matter of law.

For these reasons, all of Plaintiffs' 42 U.S.C. §1983 claims fail as a matter of law. Defendants' Summary Judgment Motion on Plaintiffs' §1983 claims is GRANTED, and those claims are DISMISSED WITH PREJUDICE.

**3.  Plaintiffs' defamation claims fail because plaintiffs offer only conclusory evidence, and because they do not prove that any alleged statement caused damages.**

Schmidt alleges a state law defamation claim against Williams based on hearing him say that, "I told you we would get her out" to someone in her neighborhood four months after the July 17th incident. A defamation plaintiff must show (1) that the defendant's statement was false, (2) that is was unprivileged, (3) fault, and (4) that the statement proximately caused damages. *Mark v. Seattle Times*, 96 Wn.2d 473, 486 (1981). A plaintiff must establish a prima facie defamation case by producing evidence of each element. *Lamon v. Butler*, 112 Wn.2d 193, 197 (1989). Conclusory statements will not suffice. *Id*. Schmidt concedes that she does not know who Officer Williams was talking about. Also, Schmidt has not established that the alleged statement was false, or that it caused damages. Schmidt's defamation claim therefore fails as a matter of law.

Gerhard also alleges a defamation claim against Williams. Gerhard bases his claim on a conversation he had with Terrance Galvan. Galvan allegedly told Gerhard that Williams called Plaintiffs drug dealers. Like Schmidt, Gerhard does not show that he suffered damage resulting from this alleged statement. Gerhard supports his claim with conclusory statements based on what a third party allegedly told him. Gerhard's defamation claim also fails as a matter of law. Defendants' Motion for Summary Judgment on Plaintiffs' defamation claims is GRANTED, and those claims are DISMISSED WITH PREJUDICE.

**4.  Plaintiffs discrimination claims fail because there is no evidence that the City Defendants discriminated against Plaintiffs.**

Plaintiffs allege a claim for disability discrimination based on their various contacts with Officers Luke and Williams. Plaintiffs apparently base this claim on Title II of the ADA, which states that:

> no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.

42 U.S.C. §12132.[2] Plaintiffs argue that the City Defendants refused to accommodate their disabilities

---

[2] Plaintiffs cannot use 42 U.S.C. §1983 to vindicate rights secured by the ADA. *See Vinson v. Thomas*, 288 F. 3d 1145, 1156 (9th Cir. 2002). Title I of the ADA is inapplicable because it relates to employment discrimination. *See* 42 U.S.C. §12112. Title III is inapplicable because it relates to discrimination in places of public accommodation, but the contacts here occurred in Plaintiffs' private residence. *See* 42 U.S.C. §12182.

ORDER
Page - 8

and did not provide them equal housing resources when they were evicted.

To succeed on this claim, Plaintiffs must show that (1) either Schmidt or Gerhard is a qualified individual with a disability; (2) they were excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (3) such exclusion, denial of benefits, or discrimination was by reason of his or her disability. *Id*; *Weinreich v. L.A. County Metro. Transp. Auth.*, 114 F.3d 976, 978-979 (9th Cir. 1997). Even if Schmidt or Gerhard is a qualified individual with a disability, they have not provided sufficient facts to satisfy the remaining elements.

Plaintiffs were not denied the benefits of the City of Tacoma's temporary housing program. Indeed, the City paid for Plaintiffs to stay in a hotel following their eviction. Also, Plaintiffs do not show that they were discriminated against by the City. Furthermore, Plaintiffs provide no evidence that the City took any action based on Plaintiffs' disability. Plaintiffs' discrimination claim therefore fails as a matter of law. The City Defendants' Motion for Summary Judgment is GRANTED. Plaintiffs' discrimination claim is DISMISSED WITH PREJUDICE.[3]

**IT IS SO ORDERED**

DATED this 6th day of December, 2010.

RONALD B. LEIGHTON
UNITED STATES DISTRICT JUDGE

---

[3] Given the judgment on this Motion, the Court denies Defendants' Motion to Strike Untimely Pleading [Dkt. #92].